Mr. Piles, good morning. Good morning. I am pleased in the courts, counsel. My name is Scott Piles. I represent the plaintiff in this case. The issue that is up on appeal before the court is whether or not the trial court erred in directing the verdict in the midst of a trial where the plaintiff was suing the Estate of Ernest M. Jordan who had died subsequent to this accident. He didn't die because of what happened in the accident. He died several months later for unrelated causes. The issue is as follows. The evidence that was produced at trial was sufficient to survive a motion for a directive finding. In the case, the following pieces of evidence were elicited. Number one, there were the judicial admissions made by the defendant prior to the case going to trial. They admitted in their answer that the deceased defendant driver was driving on Park Street in Joliet. The officer that testified in this case testified that Park Street had a traffic control device and a stop sign on its road. In the answer, they admitted that he was driving on Park Street at the intersection or in the intersection of Park and Cass. They also admitted that the plaintiff was driving his car on Cass Street, which did not have a traffic control device. It was an east-west street. And Park Street T-boned into Cass Street. So the defendant driver either had to make a right or a left turn onto Cass when he was traveling at Park Street. So you have the two judicial admissions. And I think that that's key here. I would submit that we might be looking at a different case if the defendant had not admitted that the defendant driver was on Park Street that day. If they had admitted or they had said, well, we don't know because they did not make that admission, I might not be standing here. But I think that that's a key portion of what we have. And it also distinguishes my case from a case that's relied on, which is Favist, which is relied on by the defendants. In that case, there was not an answer or a pleading where there was an admission of what had happened. In addition to the judicial admissions, you have the evidence of the investigating police officer. Now, granted, this police officer did not witness this accident, but he testified he was called to the scene of a collision that took place at Park and Cass. He also, after the accident took place, had an opportunity to observe both the plaintiff and the defendant's vehicles for the point of impact. And that was testified to at the trial as well. How would he know where the point of impact was? I think he measured up between where the two cars had met and he looked at the damage. How would he know where the two cars met? He was told by your client, right? Pardon? He was told by your client what happened. Well, I'm sure that Mr. Berry, I'm sure, did tell the police officer what had happened in the case. However, if you look at how the cars were and he went to the scene of the collision as well, because he went there first, he did talk to Mr. Berry. So he was able to look at what or where things had happened. Debris, so forth, in the intersection, things that maybe Mr. Berry did not talk about. So what happened is that Mr. Jordan, the deceased driver, he left the scene and they had to go get him. So the officer didn't see his car at the scene? No, he did not see Mr. Jordan's car at the scene. That's correct. Mr. Jordan had fled. So how did he know to go talk to Mr. Jordan? Well, because they got a license plate number and they tracked him down. Well, who did he get the license plate number from? Probably got it from Mr. Berry. However, the defense has admitted that Mr. Berry, or that Mr. Jordan was there. Not a question of whether or not, how do we know who it was? Did he admit he was in an accident with your client? He admitted that he was at the day and time and place, he admitted he was on that road, and he admitted that he was in that intersection. That's what's in the answer. Do you think there were any other cars in that intersection that day at that time? Well, there is no evidence that there were any other cars. The only evidence that we have that was produced by any answer in what we're talking about the officer was the two cars that were involved in this collision, Mr. Berry and Mr. Jordan. Now, if there was something else that happened, a squirrel had come out, another car that was involved, you may be right, but those are issues that were not in evidence and they weren't talked about. Well, who in the world could testify whether there was another car involved or a squirrel ran out? One person, your client, because the guy you're accusing of crashing was in his bed. And the Dead Man's Act doesn't let you do that, does it? The Dead Man's Act does not allow somebody that's involved in a transaction to testify about the deal or the details of that transaction if the other person that was involved in the transaction is not there to talk about it as well. And that's what we have here. So, in essence, the court is correct. I am building my case primarily on circumstantial evidence. But we do have, I want to keep in mind, I want to point out one thing. It's not a question about how do we know Mr. Jordan was there, how do we know Mr. Jordan was in the intersection, he admits that in his answer. And that's a key distinction between my case and some of the cases relied on by the defendant. We know he was there because he admitted he was there. But he didn't admit that he was in the collision. That's right. They did not admit a contact. That's correct. That's where the circumstantial evidence that was adduced at trial is a key. Number one, we do know there was an impact because Mr. Berry, on cross-examination by the defendant's counsel, stated he was involved, that there was an impact because he had hit his head into the window. Number two, we know there was an impact at that intersection because the police officer was told that there was a collision that was at there, and that was admitted into evidence. He was told by who? Well, somebody obviously called in. Are you saying that there might have been somebody else that saw the accident or was there to call it in? Again, I'm speculating because I don't know. Obviously, we don't have who the other witnesses were. Or perhaps another driver. The question, though, is did the plaintiff in this case move the needle to 51%? I mean, that's the issue here. Did you tie the debris that you say today the officer saw at the intersection to Mr. Jordan's car with some sort of independent physical analysis? I don't think that I ever – I don't know if there was any debris. You didn't say that. Well, I'm saying – You didn't say the officer was there at the scene and observed the debris from the collision. You did say that. Well, the car. Right. I mean, Mr. Berry's car had damage to it. Now, his testimony was that he saw the debris, I mean, the damage to Mr. Berry's car, and when he went to go see Mr. Jordan, he saw there was also damage to Mr. Jordan's car and that he came up with what he felt was the point of impact. Now, was the officer's, I guess, evidence about the point of impact, was it relied in part on what he observed and what he learned in his investigation? That may be true. But, you know, to a certain extent, and I cite the Tipsworth case that says that, you know, that the officer is allowed, even in light of the Dead Man's Act, to talk about evidence regarding the point of impact. So, now. That doesn't mean an officer can always give a point of impact testimony. It means if he's, I suppose, under the facts of that case. Sometimes you get there, the cars are still there. My former life, I was an accident reconstruction expert. And if the cars are there and you can put it there, then he can, unless he got live witnesses and all that kind of stuff. But if this officer had come on this scene and not talked to your client, do you think he could have reconstructed the point of impact? Just said, ah, there's two cars. That car and I'm sure this car four blocks down the road met right here. And this was the cause of the accident. There's no way he could have reconstructed this accident without talking to your, getting information from your client, would he? Again, I think that there's some truth in what you're saying. However, however, the officer did testify and it was allowed in evidence at the trial. He was allowed to talk about where the points of impact were on those vehicles. What do you mean by point of impact? Are you talking about the point of impact at the scene, at the location of the collision? No, the cars. Or the point of impact on the cars? The point of impact on the cars. Not the point of impact were in the intersection. I don't want to suggest that. I'm talking about the point of impact on the cars. Now, the other thing that we have to keep in mind, despite the judicial admissions that we have, the defendant was in fact there and he was driving in the intersection and the plaintiff was there and he was driving on cast and he did not have a stop sign, you know, section 11-904D of the Illinois Vehicle Code deals with situations like this. And there is a presumption that when there is a collision at an intersection that has a stop and yield sign, that if there is an impact in that collision, that it's prima facie evidence that the person that had the traffic control device failed to yield. Now, I'm entitled to that presumption if there was an impact at that intersection, which to a certain extent has been testified to at the trial and it is admitted by the defendant that he was in that intersection with the vehicle of the plaintiff. But he didn't admit he collided with your client and B, even if you're right that the statute makes it a prima facie case, but the other side is entitled to rebut it and you can't, and of course dead people can't rebut much. And sometimes the Dead Man's Act works an unfair advantage, but we didn't write it, you know, we just got to live with it. Nor was there anything that prohibited somebody from talking to Mr. Jordan before he died? There were some months that passed. Correct. All I can say is that when we're looking at whether or not the trial court erred, I'm entitled, the plaintiff is entitled, I should say, to every inference and view favorably in terms of whether or not this should have been granted or not. And the question here is, did the plaintiff move the needle to 51% in terms of being allowed to have this case sent to the jury? Now, very well the jury might have said, you know what, I don't have enough evidence here, I'm not 100% sure what happened, I don't know if the plaintiffs proved their case and then I would have lost the verdict. That's one issue, because in this particular case, the plaintiff was entitled to have these facts looked at by a jury and have them say that the plaintiff didn't meet their burden of proof. Because in essence, by the virtue of the fact that the defendant admitted that he was in that intersection, he was driving that car, and that they admitted that the plaintiff was on his road without a traffic control device, coupled with the officer's testimony that the defendant had a stop sign on his road and the plaintiff did not have a stop sign, you couple that with the fact that I have a statute that says if there's a collision in the intersection, that is a prima facie case that the defendant failed to yield, I think that moves the needle to 51%. Well, I think you might be right if he had admitted that he collided with your client. But what's the population of Will County? I would say three quarters of a million people live in Will County. And a lot of those people got cars, and my guess is those weren't the only two cars at that intersection that day. So the fact that you put him at that intersection that day doesn't put him in a collision with your client. Well, Justice Smith, all I would say is this, that we have to look at what was induced at trial. And out of those 750,000 people that live in Will County, there's only two people in evidence at our trial that were in that intersection, Mr. Berry and Mr. Jordan. That's what was admitted by the defendant in their answer. Could there have been somebody else? Yes. And they may have moved the needle back to below 51%, but that was not done here. There was no evidence of any other cars. There was no evidence of any other people involved in the collision. There was only two people, Mr. Jordan and Mr. Berry, which were admitted by the defendant in their answer. Now, Mr. Files, the presumption that you have is, as I understand it, a presumption that says that whoever collided with your client is presumed to have been responsible because of the traffic devices that were and were not for them. But there's no evidence of who your client collided with. There is. Officer Benzon's testimony regarding the point of impact, where he looked at the two vehicles that were alleged to have been in this collision, and his testimony was that it was consistent. We do have evidence that there was an impact because this came from Mr. Berry. I want to point out one other thing. You know, the medical records that were admitted into evidence in this case have a paragraph that talk about there's a sentence in the medical records. It is Mr. Berry's, a little bit of what Mr. Berry's version of this accident was. There's a sentence in there during the history that the doctor had taken. And by the way, the medical records were admitted into evidence. There's a sentence in there that indicates that the plaintiff was injured when someone ran a stop sign. So that's another variable added to the fleet. But that's not medical history. That type of statement in the medical record, when someone ran a stop sign, if he got in a collision, it doesn't affect his treatment one way or another, whether the car that hit him ran a stop sign or he ran a stop sign or who ran the stop sign. That's, you can't, even on the dead man's neck, you can't, and even if, I don't know if there's an objection to it or not, but that's not medical history. I would disagree. I think that the facts of what happened, the fact that where the impact took place is a very important part of the history because what it does, it shows a type of impact he had. It was a side impact in that the body was moved to the side and that is an important fact for a doctor to use in a medical diagnosis in treating the injuries that he had in the case. If you collide at 90 degrees X miles an hour, it doesn't make any difference if somebody just went through a stop sign or a red light or over a body before that collision as far as the dynamics of what happened in the car. And if your client were allowed to testify, that statement would be, at best, a prior consistent statement. If your client were allowed to testify at trial, but of course he couldn't because of the same, and I understand the frustration here, but it's... I still think that because the fact that we have the judicial admissions that he admits that they were both at the intersection at the same time and there's nothing in there to contradict that, I think that that moves the needle to 51%. And I have the presumption in the statute there's an impact, plus you have the point of impact evidence from the police officer. I think that moves the needle to 51%, and this case should have been allowed to go to the jury. If you had a judicial admission that he'd been involved in a collision, you'd be golden, but you don't have that. Justice McDade, I would say this. Because the judicial admission that they admit that those two cars were in the intersection and there was no other evidence of any other cars, I think that is enough. Because if there was another car, then that could have been evidence that should have been brought forward by the defendant in the case. But here's the deal. To say there's no other evidence of any cars, now think about this. Your client can't testify because he's barred. Correct. Right? The defendant can't testify because he's dead. Correct. So nobody that was there to witness it, and now to sit here and say, gee, there was no evidence of other vehicles sitting there, well, that might be because there was no witnesses who can testify to what cars, if any, were there. And so to use that as the springboard for saying that there's no evidence of other vehicles in the intersection at that time doesn't seem to work. Justice Smith, I would only say one thing. If they had answered, if they had not admitted in their answer that those two cars were in that intersection at the time, date, and location, I might have to concede that point. But I don't have to concede that point because the defense admitted in their answer, a judicial admission, that those two cars were in that intersection at that time and at that date and at that location. And with that admission, with that admission, together with the other evidence that we have, moves the needle to 51%. If I did not have that, I would not be standing here. But I do have that. I do have that judicial admission, and there are no other evidence. Granted, if there were any witnesses, but we do know two things. Those two cars were there, and we do have the investigating police officer that looked at the damage of the two cars, and he testified about what he saw. And I think that that moves the needle to 51%. Thank you. Any questions? Thank you, Mr. Powles. Ms. Hillison. Good morning. Good morning. May it please the Court and counsel. My name is Keely Hillison. I represent the defendant. First, I want to address something that counsel has said repeatedly. Mr. Powles has said repeatedly that the defendant admitted that he was in the intersection at the time and place. That's just not the case. The defendant never admitted that he was in the intersection. I ask that you look in the record to what he's actually referring to. I think it's on page 24 of the record, the allegations, paragraphs 1 and 2 of the complaint. It simply says that the defendant was driving, or was, sorry, paragraph 1 says, that on or about March 10, 2010, the plaintiff, Dennis Berry Sr., was the operator of a motor vehicle that was eastbound on Cass Street at its intersection with Park Street in the city of Joliet in the county of Will, state of Illinois. Not in the intersection, at the intersection. It doesn't say the time. It doesn't say how anyone was operating. Paragraph 2. Does it describe the vehicle? No. Paragraph 2 says that at said time and place, the defendant, Ernest M. Jordan, was the operator of a motor vehicle that was southbound on Park Street at its intersection with Cass Street in the city of Joliet in the county of Will, state of Illinois. Never, first of all, we only admitted date, location, and operation, and denied everything else. Based on your admission, is it possible that somebody else was driving the car that the officer saw parked four blocks away? It is possible. All we have, as far as admission, that at some time on March 10, 2010, Ernest Jordan was driving, wasn't even driving, was the operator of a motor vehicle, some motor vehicle, that was southbound on Park Street at its intersection with Cass Street. Not in the intersection. It never says that he entered that intersection. It never says, the defendant never admitted that he ever passed by that stop sign. Counsel is relying on some presumption of the statute. We have an intersection where one party has a stop sign and the other party doesn't, but we don't have any evidence or admission or testimony of any kind in this case to show that Mr. Jordan ever entered that intersection or that he ever proceeded past the stop sign. How can the presumption under the statute arise if there's no evidence that he even entered the intersection? Was he still there when the police officer got there? Pardon me? Was he still there when the police officer got there? No, the police officer never saw him or his vehicle at the scene of the accident. Was it a T-intersection? I believe that was the testimony that it was a T-intersection. Then he had to, at some point, have gone through the intersection. I don't know if he backed up and turned around. I don't know. He's dead. We didn't get to talk to him, so we don't know what happened, but you can't presume that. And as the judge below pointed out, maybe the plaintiff swerved avoid hitting the squirrel and ran into the defendant's car while he stopped at the intersection. We don't know. That could have happened, or maybe the plaintiff decided to turn on the Park Street and turn wide and hit the defendant's car while he was stopped at the stop sign. We don't know. Another thing that I'd like to correct, the plaintiff's attorney talked about debris in the intersection and the police officer seeing debris at the intersection. There was no evidence of that whatsoever. The police officer did not talk about debris at the intersection. There was no evidence of debris at the intersection. And this separates this case from one of the cases that the plaintiff cited and relies on. This case is more like the cases that we cite. There was no evidence of any debris at the scene of the accident, no skin marks, no damaged guardrails to show what happened or to help locate the point of impact. The police officer couldn't possibly testify to the point of impact. All the police officer saw was, presumably saw the plaintiff's vehicle at the scene of the accident and the plaintiff. He never saw the defendant or the defendant's vehicle at the scene of the accident. Sometime later, he saw the defendant's vehicle somewhere else. Usually when one thinks of point of impact, one thinks about the location on the highway. Here what the officer testified to was, in essence, the plaintiff told me that he got in a collision with this car. He gave me a license plate. I went over and the damage seemed to match up as if these two cars had come together, right? It didn't say where or how. That's correct. And to the extent that the police officer was relying on whatever the plaintiff may have told him, it's hearsay and inadmissible under the Dead Man's Act as well. The police officer could only testify as to what he observed, not to what he thinks happened based on what the plaintiff told him. And the police officer did not even testify as to any admissions by Mr. Jordan. Mr. Jordan never admitted that he was in this accident. He never admitted anything to the police officer. In fact, the plaintiff's attorney admitted during the trial, on page 62 of the transcript, that the police officer didn't remember Mr. Jordan making any admissions. So what do we have? We have the defendant driving on Park Street on the day of the accident at the intersection, not in the intersection. We have the police officer seeing some damage on Mr. Jordan's car, seeing some damage on Mr. Berry's car, never seeing him at the intersection, never having any idea how they came together, or whether, in fact, they came together. Maybe the damage was from some other accident. We don't know. And the plaintiff has the burden of proof. Another thing I want to address, the medical records that counsel referred to, first of all, I think you're correct that this is not admissible evidence of how the accident happened, but also you don't know how the court ruled on those records because the plaintiff failed to include in the record the transcript of the motions in limine and the transcript where this exhibit was discussed. I requested that the plaintiff include that in the record, and the plaintiff did not. I think absent the transcript of how this particular exhibit was addressed by the court, the court has to assume that the court below properly ruled on it and properly directed a verdict in favor of the defendant. In this case, there was simply no evidence that the defendant drove past the stop sign, no evidence of where the defendant's car was at the time of the accident, no evidence that the defendant ever entered the intersection before the accident, no evidence that the defendant collided with the plaintiff. There was no evidence of where this accident happened, whether it was in the intersection or whether it was outside of the intersection while the defendant was still stopped at the stop sign. There is no evidence of whether the defendant was stopped or moving at the time of the accident, no evidence of the defendant's speed at any time, no evidence of any action or maneuver whatsoever taken by the defendant, no admission of that. There's just simply nothing on which to base a verdict for the defendant. And as far as the plaintiff talking about hitting his head in the collision, that I believe is inadmissible and the plaintiff blurted that out in violation of the Dead Man's Act. It was not in response to a question that was asked by the defense counsel. The defense counsel simply asked about the plaintiff's pain. They didn't ask about how the accident happened, they didn't ask about hitting his head or hitting anything at the time of the accident, simply asked about the plaintiff's pain. And in response, the plaintiff gave an unresponsive answer and blurted out that he hit his head in the impact. That doesn't open the door for a waiver of the Dead Man's Act. It doesn't open the door for the plaintiff to testify about the accident. And if the court were to rule that way, I submit that the Dead Man's Act could easily be avoided in every case simply by having the adverse party blurt out the very testimony that the act bars. And I think you have to enforce the rule. As you said, sometimes it may work a hardship, sometimes it helps, but it is the law and it needs to be enforced. The simple fact that an accident may have happened is not sufficient to support a verdict for the defendant. I'm sorry, for the plaintiff. The plaintiff has the burden to prove not just that an accident happened, but they have to present some evidence of some negligence by the defendant. And the plaintiff failed to do that in this case. So the court below properly directed a verdict in favor of the defendant, and I would ask that you affirm the judgment of the trial court. Thank you. Thank you, Mr. Carlson. Mr. Piles, any rebuttal? Briefly. I would submit, I didn't want to create the impression that there was garbage or something on the road. When I'm talking about the defense, I'm talking about the plaintiff's car and the damage to the plaintiff's car and what was there. I'm not talking about the damage that the plaintiff showed after the accident from looking at his car. So we're not talking about point of impact on the roadway? Correct. We're talking about physical damage on the car? Correct. But I do want to point out, the defense seems to want to go back and review some of the rulings. The record that I submitted to the court shows that Plaintiff's Exhibit 2 was admitted into evidence. There's not a question about that. There's an objection made at evidence and it was overruled. So the medical record was in evidence. It was admitted by the trial court. There was an objection and the objection was overruled. In talking about what the answer admits or doesn't admit, again, I want to refer to what the standard, Hedrick, has. Before you do that, let me ask you this. Sure. If there had been another car, for example, right before the defendant's car went through there or right after, and you ask that person on or about such-and-such a date, were you at such-and-such a place in such-and-such a county at such-and-such an intersection, that person, if they're right in front of the defendant or right behind him, the answer would be yes, right? So, in other words, what does that admission get you as far as causing this accident? I think it gets me a lot. And I'll tell you, here's why I say that. Because, again, we have to look at what was admitted at trial. There were no, there was nothing about squirrels. There were none about any other cars at this intersection. All we have, and what was admitted into evidence or what was admitted by the defendant in their answer and what was read to the jury was the fact that the defendant admitted that the plaintiff and the defendant were at that intersection. We also know that there was an impact at that intersection, and we also know that there was damage to both Mr. Jordan and Mr. Berry's car that was witnessed by the police officer. And I have a statute that indicates that if there is a collision at an intersection where one... But as the judge pointed out, how do we know that your client didn't hit the defendant who was stopped at the stop sign? I guess we don't. But we don't have any evidence, but that goes to whether or not they're going to rebut the presumption that's in the statute. The statute has a presumption that if there's a collision at that intersection and the defendant has the stop sign, I get the presumption that he was prima facie negligent for failing to yield. Well, let me disagree. What you have is a presumption if, in fact, that accident occurs out in the intersection. There is no evidence where, in respect to that stop sign, that accident occurred. In other words, was he stopped at the stop sign when your client ran into him? It's only if you proceed... that presumption occurs if you look closely at that statute, that one who proceeds past a stop or a yield sign and is involved in an accident is prima facie evidence of failure to yield right away. But there's no evidence that when the accident occurred that the defendant had, in fact, proceeded past the sign. Mr. Berry testified at the trial that he never left the left lane of Cass. Well, Mr. Berry... That's what the evidence is. The evidence was that he never left the left lane of Cass. He doesn't get to testify about where the accident occurred. Well... And then I say, well, the other guy... That's the point of the Dead Man's Act, because the defendant, if he were alive, could say, well, he did too. He came right over here and ran into me. That's why I'm thinking that's probably the reason they have the Dead Man's Act, is to prevent that type of situation. And to say, gee, my client's testimony in that regard is uncontradicted. Well, of course it is. But the law says you can like it or not. Mr. Schmidt, I would say that I would have a tendency to agree with you if they had not admitted in the answer that that defendant was there and that he was there. Now, we can talk about, you know, the wording in the complaint about whether I'm in the intersection or at the intersection. That's why it's so important to draft a well-thought-out complaint. And I think that the complaint was actually pretty good here, because they admitted it, and I am entitled to the inference that he was in that intersection, because I'm entitled to all reasonable inferences under the standard of PEDRIC in determining whether or not a motion for a directed finding should have been granted. In reviewing the evidence, a trial court cannot ignore the circumstantial evidence or reasonable inferences of negligence that can be drawn from the circumstantial evidence. And I would submit to you that the fact that they admitted that they were there... I'm sorry, I know you want to ask me something. The fact that they admitted they were there and in that intersection, and the fact that there were damage to those cars that the police officer witnessed, and the fact that... and I can understand that you think that... I'm only talking about what was admitted at the trial court. And admitted at the trial court is that Mr. Berry did not leave the left lane of Cass. So, you know, we have to look at what was admitted as evidence at the trial. And the evidence at trial was that Mr. Berry was in the left lane. So it isn't a circumstance that he hit Mr. Jordan's car or anything else. All we have is that they admit that they were in the intersection together, there was an impact, that the officer saw the damage to the two cars, and that I have a presumption that if the defendant has a stop sign at that intersection and my guy has the right-of-way, that I have that there is a prima facie case that the defendant failed to yield right-of-way, and that moves the needle to 51%. If I was asking here to have you review a jury verdict with regard to that, I would not be standing here. That is not the standard. The standard here is, is there enough reasonable inferences that can be drawn from the evidence in the case that the trial court should not have directed it. That's the issue. Let me ask you this. You said, so if we're looking at a jury verdict, let's suppose you got a plaintiff's verdict and the defendant appealed. What would we be looking at? I think that the jury verdict would be upheld because they are the triers of fact. They looked at the evidence that was in the case, and they drew their conclusions from it. Of course, the defendant's argument on appeal is going to be we were entitled to either a directed verdict or a JNOB because of the dead man's act. They never put him in the car. The admission or the evidence never put Mr. Jordan in the particular car that the officer observed four blocks away. And it could have been easily solved with a complaint that alleged he was in that particular make and model of car, bearing this license plate number at the intersection. Justice Wright, I would only say this. That I think that the fact that we did not identify the type and make and model of the car in this particular instance is because we have the officer's testimony that he went and he saw that there was impact damage on Mr. Jordan's car. Was Mr. Jordan in the car when the officer was there? Well, he wasn't, but then Mr. Jordan admitted in his answer the operation of that vehicle at that location and at that time, the same time that Mr. Berry was there. I think that moves the needle 51%. I obviously understand your point. And there was no time. He said that he admitted to being in that intersection on or about that date. I want to be accurate. I don't want to misquote. I'm remembering in myself what the answer specifically says. I suspect what the answer says, but what's the question say? What's the allegation? The allegation is that on that said time and place, the defendant, Ernest M. Jordan, was the operator of a motor vehicle that was southbound on Park Street at the intersection with Cash Street in the city of Jolietville County, state of Illinois. The defendant's answer admits the date and operation, admits location, and denies the remaining allegation. Now, they put him at that intersection, driving that car, on that date. Not that car. Driving a car. See, that's why the Dead Man's Act exists. Because once somebody passes away, there's a temptation to embellish the facts just a bit because they can't respond. Justice Wright, I would submit that if that was in fact the case, they would have denied the operation of the vehicle. That word that they use in the answer is key. They admit the operation of the vehicle. Because there are allegations in the complaint that he was operating a motor vehicle, they admit the operation of the motor vehicle. I understand your point. I don't necessarily agree. Thank you. We thank both of you for your arguments this morning. We'll take the case under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel change.